UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANTONIO POOLE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   NO. 3:14-cv-01884 |
| | )   JUDGE CRENSHAW |
| LOWE'S HOME CENTERS, LLC, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Antonio Poole filed suit for negligence in the Davidson County Circuit Court against Lowe's Home Centers, LLC, ("Lowe's"), based on injuries he obtained when an eighty-gallon air compressor that Lowe's had secured to a pallet tipped over and struck Poole's leg. (Doc. No. 1-1.) Lowe's removed the case to this Court, citing federal jurisdiction based on diversity of citizenship. (Doc. No. 1.) Lowe's has now filed a Motion for Summary Judgment. (Doc. No. 59.) While that motion was pending, Poole filed a motion to disqualify Lowe's counsel. (Doc. No. 99.) For the reasons discussed herein, both motions will be **DENIED**.

## I. BACKGROUND

At all times relevant to this case, Poole was employed as a dock specialist by Altaquip, LLC, ("Altaquip"), a company providing equipment service and repair at a facility in Davidson County, Tennessee. (Doc. No. 5 at ¶ 4; Doc. No. 62-1 at ¶ 14.) Altaquip was party to a Master Professional Services Agreement with Lowe's, the operator of a chain of retail home improvement and appliance stores. (Doc. No. 62-1 at ¶¶ 4, 6; Doc. No. 66.) Under that agreement, Altaquip would provide repairs for various types of equipment from Lowe's stores. (Doc. No. 62-1 at ¶ 7.)

1

When a repair was needed, Altaquip would send its own trucks and drivers to pick up the damaged item from the relevant Lowe's location and bring the item to an Altaquip service center, such as the one where Poole worked. When Altaquip's repairs were completed, Altaquip would deliver the equipment back to the Lowe's store. (Id. at ¶¶ 9–10.) On or around April 8, 2014, employees at a Cullman, Alabama Lowe's location determined that they would send an eighty-gallon Kobalt air compressor device, which had been returned by a customer, to Altaquip for repair. (Id. at ¶ 18.) Lowe's has estimated the compressor as approximately six feet tall and weighing several hundred pounds. It stands on three legs. (Id. at ¶ 5.)

Lowe's associate Butch Mahler was instructed to affix the compressor to a pallet for transport, or "palletize" it. (Id. at ¶ 18.) Mahler had prepared eighty-gallon Kobalt compressors for transport before, approximately twenty-five times over fifteen years. (Doc. No. 71 at ¶ 1.) He selected what Lowe's has described as a "normal slatted pallet of sturdy oak wood" for the task. (Doc. No. 62-1 at ¶ 24.) The pallet was either a half inch or three-quarters of an inch thick. (Doc. No. 71 at ¶ 4.) The parties agree that an eighty-gallon Kobalt compressor could, in theory, instead have been affixed to a sturdier "manufacturer's pallet" that apparently comes with the compressor upon purchase, but that Mahler testified he did not do so because the customer who returned the compressor did not include the manufacturer's pallet that had originally accompanied it. (Doc. No. 62-1 at ¶¶ 35–36; Doc. No. 60 at 4; Doc. No. 63 at 2.) The parties also agree that normal slatted pallets can be modified into solid pallets, similar to a manufacturer's pallet. (Doc. No. 62-1 at ¶ 37.)

Mahler testified that he palletized the compressor by placing it on the slatted oak pallet, drilling a hole through each leg, and bolting each leg to the pallet with either two-inch or one-and-three-quarter-inch bolts. According to Mahler, he had used that type of bolt to palletize the same

2

type of compressor before, and he did not use longer bolts because those bolts would extend through the pallet, creating the risk that they might be struck and come loose while the palletized compressor was being moved. (Doc. No. 63-1 at 9–10, 20.) Poole disputes that all three legs were affixed to the pallet, noting deposition testimony by Altaquip assistant service center manager Lee Saeger that, at least by the time of Poole's injury, there appeared to be only two bolts present. (Doc. No. 62-1 at ¶ 19; Doc. No. 63-3 at 20–21, 35, 45–46.) In any event, Mahler's testimony is that he fully secured the compressor to the pallet and that, after doing so, he verified that the palletization was stable by rocking the combined compressor and pallet back and forth briefly with his hands. (Doc. No. 63-1 at 21.)

Altaquip driver Jason Payne had been dispatched to pick up the compressor for transport to the Altaquip service center. Once he arrived at the Cullman, Alabama Lowe's store, he accessed the loading dock and used a pallet jack to move the palletized compressor into his twenty-six-foot Altaquip box truck. (Doc. No. 62-1 at ¶ 43; Doc. No. 63-6 at 10.) Payne did not experience any tipping of the compressor when he loaded it into the truck, but his deposition testimony acknowledges the need to move the large, heavy compressors carefully. (Doc. No. 62-1 at ¶ 45; Doc. No. 63-6 at 13.) Once it was loaded, Payne strapped the palletized compressor to the wall of the truck to avoid it tipping over during transport, and drove the compressor to the Nashville service center, where he unloaded it with a pallet jack at Altaquip's own loading dock. (Doc. No. 62-1 at ¶¶ 47–48, 52–54.) He did not inspect the compressor to determine how well palletized it was and testified that he does not recall if the compressor was missing one of the three bolts that would typically be used to palletize it. (Id. at ¶ 55–56.)

The parties agree that, at some point—either immediately prior to Poole's injury on April 30, 2014, or before—the compressor became "unfastened and unsecured from the pallet,"

3

rendering it unsafe. (Id. at ¶ 69.) None of the evidence identified by either party pinpoints when the compressor began to come loose. Poole concedes that Altaquip's usual process for assessing and repairing compressors involved moving the compressor to different areas of the service center. (Id. at ¶¶ 60–61.) The full extent to which this particular compressor was moved, however, and what role that movement played in its coming unfastened are unclear. (Id.)

Poole does not dispute that, from the time Altaquip received the compressor on April 8, 2014, until the accident twenty-two days later, Altaquip's employees never "perform[ed] any inspection" of the compressor to determine whether it needed to be re-palletized. (Id. at ¶ 62.) In his testimony, Saeger admitted that the failure to inspect was a departure from what he understood to be Altaquip's expected practice:

> Q. Okay. And what were you-all—at that point, prior to the incident with Mr. Poole, what were you-all trained to actually inspect for?
>
> A. I mean, actually, we—the only thing that we were trained to inspect for to look at was to make sure they were on sturdy pallets and—and with bolts, but 90 percent of the time we didn't do that.

(Doc. No. 61-3 at 33.) Saeger noted in particular that dock specialist Jose Otero "should have been inspecting these things off of the truck when they came in just to make sure." (Id. at 41.) Despite the lack of a formal inspection, however, there is some evidence that Altaquip employees noticed or were aware that the compressor was becoming wobbly or loose. Otero's testimony suggests that he became aware that the compressor was wobbly the day prior to Poole's injury, and that he told Saeger. (Doc. No 61-6 at 60, 68–69, 85.) Saeger, though, disputed that account, testifying that no one, at any point prior to the injury, expressed any concern to him about the stability of the compressor's connection to the pallet.[1] (Doc. No. 61-3 at 49.)

---

[1] Poole's own response to Lowe's interrogatories appears to contradict this claim by Saeger. When asked to identify individuals with first-hand knowledge of the accident, Poole refers to

On April 30, 2014, Saeger instructed Poole to move the compressor to a location in the facility where it would be loaded onto an Altaquip truck for shipment back to Lowe's. (Doc. No. 62-1 at ¶ 74.) Poole had never before moved a similar large compressor with a pallet jack or seen anyone else do so. (Id. at ¶¶ 77–78.) He did not inspect the palletization of the compressor before attempting to move it, and the parties agree that Poole did not personally know whether or not bolts attached the compressor to the pallet. (Id. at ¶¶ 80–81.) At some point while moving the compressor with the pallet jack, Poole, in his words, "noticed [that] there was something a little off about" the compressor. (Doc. No. 61-1 at 29.) He testified that he left the area behind the handle of the pallet jack to examine the compressor, and the compressor began tipping over and ultimately struck his leg. (Id. at 29–30.) Poole claims to have suffered an open tibial fracture, a large soft tissue defect, and an arterial injury from the incident. (Doc. No. 1-1 at ¶ 6.) It is undisputed that, if Poole had remained behind the handle of the pallet jack, he would have been unharmed by the compressor tipping over. (Doc. No. 62-1 at ¶ 88.)

On August 29, 2014, Poole filed his Complaint in Davidson County Circuit Court alleging that Lowe's had been negligent in three ways, "among others": (1) delivering the compressor to Altaquip in unsafe condition; (2) failing to use due and reasonable care in preparing and packaging the compressor for bailment to Altaquip; and (3) failing to warn Poole of the unsafe nature of the compressor, as palletized by Lowe's. (Doc. No. 1-1 at ¶ 7.) Following removal of the case to

---

another Altaquip employee, Ha Ki Bass, as having "[t]alked to Lee about the air compressor being loose prior to the incident." (Doc. No. 61-8 at 1.) Because the purpose of Poole's response was merely to identify Bass and Saeger as individuals with knowledge and the response does not establish the basis for its assertion regarding Bass, the Court does not construe the response as a binding admission of Saeger's prior knowledge. See Walker v. Mulvihill, 83 F.3d 423 (table), 1996 WL 200288, at *5 (6th Cir. Apr. 24, 1996) (observing that interrogatory responses, "while proper as admissions, are not necessarily binding"); Kinslow v. Franklin Cty. Sch. Sys., No. 4:12-CV-45, 2014 WL 11511059, at *4 (E.D. Tenn. Oct. 1, 2014) (same).

federal court, Altaquip—represented by John W. Simmons of Littler Mendelson, P.C., who also represented Lowe's—filed a motion seeking to intervene in the case for the purpose of protecting and enforcing a lien against Poole's potential recovery. (Doc. No. 21.) Altaquip contends that Poole had been receiving workers' compensation benefits based on his injury, and that Altaquip therefore has a statutory right to a subrogation lien against any recovery from a third party for that injury. (Doc. No. 22 at 2 (citing Tenn. Code Ann. § 50-6-112(c)(1)).) The Court granted Altaquip's motion to intervene on February 23, 2015. (Doc. No. 24.)

Following discovery, Lowe's filed the instant motion for summary judgment on February 17, 2016. (Doc. No. 59.) On October 24, 2016, Poole filed a motion seeking to disqualify Littler Mendelson and the law firm of Sherrard, Roe, Voight & Harbison, PLC—which had joined the case in March of 2016—from dual representation of Altaquip and Lowe's. (Doc. No. 99.) In its motion, Lowe's noted that, in addition to its workers' compensation lien rights, Altaquip has a responsibility, under the Master Professional Services Agreement, to indemnify, defend, and hold harmless Lowe's in any matter related to Altaquip's products or services, including this litigation. (Doc. No. 100 at 8.)

## II. MOTION TO DISQUALIFY COUNSEL

Poole asks the Court to disqualify Lowe's and Altaquip's counsel because they are tainted by a non-waivable conflict of interest arising out of the direct adversity between Lowe's and Altaquip. Lowe's and Altaquip respond that Poole has waived any objection by acquiescing to the dual representation for over a year, that Poole does not have standing to object to the dual representation, and that there is no conflict between Lowe's and Altaquip, either in this litigation or the broader underlying set of facts and obligations surrounding Poole's injury.

Disqualification of counsel is a matter within the Court's discretion. Grain v. Trinity Health, 431 F. App'x 434, 445 (6th Cir. 2011). "Courts must be vigilant in reviewing motions to disqualify counsel[,] as 'the ability to deny one's opponent the services of capable counsel[ ] is a potent weapon' that can be 'misused as a technique of harassment.'" Moses v. Sterling Commerce (Am.), Inc., 122 F. App'x 177, 183 (6th Cir. 2005) (quoting Manning v. Waring, Cox, James, Sklar & Allen, 849 F.2d 222, 224 (6th Cir. 1988); Kitchen v. Aristech Chem., 769 F. Supp. 254, 257 (S.D. Ohio 1991)). Disqualification of counsel at a late stage of proceedings, after discovery has occurred and trial set, is a particularly "draconian sanction." Garland v. Ford Motor Co., No. 2:12-00121, 2015 WL 1401030, at *9 (M.D. Tenn. Mar. 26, 2015).

By Poole's own account, the apparent material interests of Lowe's and Altaquip in this litigation are not in conflict, but in fact are closely aligned. Altaquip's immunity from tort liability under the state's workers' compensation laws, see infra, combined with its indemnification obligation under the Master Professional Services Agreement, result in a situation where it is in both Lowe's and Altaquip's interests for the Court to conclude that Altaquip is the sole cause of Poole's injuries. Poole's motion, therefore, is based not any practical divergence of interests but a formal, technical adversity between the parties. See Tenn. Sup. Ct. R. 8, R. Prof. Conduct 1.7(b)(3) (forbidding waiver of conflict for dual representation in matters involving "the assertion of a claim by one client against another client represented by the lawyer in the same litigation . . . before a tribunal"). Poole, though, has been aware of that formal, technical adversity since Altaquip sought to intervene in the case in February of 2015. At the time, counsel for Altaquip consulted with Poole about the anticipated motion to intervene, and Poole's counsel "indicated that he did not anticipate filing anything in opposition to such motion." (Doc. No. 23.) Poole

7

waited until twenty months later, after discovery and the full briefing of a dispositive motion, to raise his objection to the dual representation.

"It is well settled that," where a party "is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but . . . knowingly refrains from asserting [the objection] promptly," the party may be "deemed to have waived that right." In re Valley-Vulcan Mold Co., 5 F. App'x 396, 401 (6th Cir. 2001). Such is the case here. Poole was well aware of the dual representation in this case for over a year and a half, but raised his objection only after a dispositive motion was filed and a trial date quickly approaching. Moreover, Poole has identified no fundamental injustice that would lead the court to overlook his delay in the interest of protecting the integrity of the proceedings. Poole complains that the shared representation has allowed Lowe's and Altaquip to share information and work in concert, but such cooperation would likely be in the parties' interests and occur regardless of whether they had the same or different attorneys. Poole's objection is waived and his motion will be denied.

## III. MOTION FOR SUMMARY JUDGMENT

A. Standard of Review

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there is "genuine dispute as to any material fact and [whether] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A motion for summary judgment requires that the Court view the "inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "The party bringing the summary judgment motion has the initial burden of informing [the Court] of the basis for its motion and identifying portions of the record that demonstrate the absence of a

8

genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). After the movant has satisfied this initial burden, the nonmoving party has the burden of showing that a "rational trier of fact [could] find for the non-moving party," and that therefore "there is [a] 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–52 (1986). "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247–49).

B. Cause in fact

A plaintiff seeking to make out a prima facie case for negligence must establish the following elements: "[(1)] a duty of care owed by the defendant to the plaintiff; [(2)] a breach of that duty; [(3)] an injury or loss; [(4)] cause in fact; and [(6)] proximate legal causation." Atria v. Vanderbilt Univ., 142 F. App'x 246, 255–56 (6th Cir. 2005) (citing Camper v. Minor, 915 S.W.2d 437, 446 (Tenn. 1996)). Lowe's argues that Poole cannot establish the fourth element, cause in fact, because even if Lowe's acted negligently in originally palletizing the compressor on a thin pallet with short bolts, Poole's injury was caused in fact by Altaquip's intervening mishandling of the compressor during the twenty-two days between when Altaquip picked it up from the Alabama Lowe's store and Poole's April 30, 2014 injury. Poole responds that Lowe's argument is inconsistent with Tennessee policy precluding the apportionment of liability to an employer against whom an injured employee has a workers' compensation claim, and that, in any event, any

alleged negligence by Altaquip was foreseeable and does not relieve Lowe's of responsibility for its own negligent actions.

In order to recover for negligence in Tennessee, "[t]he plaintiff need not prove that the defendant's conduct was the sole cause-in-fact of the loss[,] because a single injury may be the result of more than one cause-in-fact." Sears v. Metro. Nashville Airport Auth., No. 01A01-9703-CV-00138, 1999 WL 536341, at *8 (Tenn. Ct. App. July 27, 1999) (citing Burgess v. Harley, 934 S.W.2d 58, 68 (Tenn. Ct. App. 1996)). To that end, Tennessee has embraced a regime of modified comparative fault that allows a court to apportion fault—and liability—between multiple tortfeasors, as long as the plaintiff himself is less than fifty percent responsible for his injury. See Moore v. Indus. Maint. Serv. of Tenn., Inc., 570 F. App'x 569, 575 (6th Cir. 2014) (citing McIntyre v. Balentine, 833 S.W.2d 52, 58 (Tenn. 1992)). That system, however, runs into "thorny problems" when one alleged contributing wrongdoer enjoys an immunity from suit or liability that the other alleged contributing wrongdoers do not. Troup v. Fischer Steel Corp., 236 S.W.3d 143, 146 (Tenn. 2007); see, e.g., Carroll v. Whitney, 29 S.W.3d 14, 19 (Tenn. 2000) (discussing apportionment of fault to nonparties in medical malpractice suit who were immune to liability as state employees). In such cases, the courts must look to the underlying statutes and common law principles to determine how a court should consider the actions of the immune party. See Carroll, 29 S.W.3d at 19; Troup, 236 S.W.3d at 148.

When an employee in Tennessee suffers a work-related injury, the "employer is immune from liability in tort to the injured employee under Tennessee Code Annotated § 50-6-108, known as the 'exclusive remedy' provision of the Workers' Compensation Act." Blackwell v. Comanche Const., Inc., No. W2012-01309-COA-R9CV, 2013 WL 1557599, at *5 (Tenn. Ct. App. Apr. 15, 2013) (citing Troup, 236 S.W.3d at 148; Campbell v. Dick Broad. Co., 883 S.W.2d 604, 606 (Tenn.

1994)). The Tennessee Supreme Court has expressly addressed the interplay between the exclusive remedy provision and the comparative fault regime, concluding that the exclusive remedy provision prevents a court from assessing fault to the injured employee's employer as a matter of law. See Troup, 236 S.W.3d 148; Snyder v. LTG Lufttechnische GmbH, 955 S.W.2d 252, 256 (Tenn. 1997); Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 81 (Tenn. 1996); see also Long v. Quad Power Prod., LLC, No. E2013-02708-COA-R3CV, 2015 WL 1306872, at *10 (Tenn. Ct. App. Mar. 20, 2015). Nevertheless, a court may still consider the actions of an employer when making the fact-based determination of whether the named defendant or defendants' actions constitute cause in fact of the plaintiff's injury. Snyder, 955 S.W.2d at 256.

In other words, although "the employer cannot be found to be the proximate, or legal, cause of the plaintiff's injuries because the employer is immune from tort liability," the factfinder may nevertheless "consider all evidence relevant to the event leading up to the incident that injured the plaintiff," including evidence regarding the intervening acts of the employer. Id. at 256–57. The factfinder will then "consider the actions of the employer only in assessing whether the plaintiff has met his burden of establishing the elements necessary to recover against the defendants." Id. at 257. If evidence of the employer's intervening actions wholly negates the conclusion that the defendant was the cause in fact of the plaintiff's injuries, the plaintiff's claim will fail—not because the employer *was* the cause of the injury, but because the defendant *was not*. See id.; Troup, 236 S.W.3d 149–50. Lowe's is therefore entitled to argue that Altaquip's actions undermine or even foreclose the proposition that it caused Poole's injury.

The bar for such a showing, though, is high. See Troup, 236 S.W.3d 149–50 (noting that defendant is entitled to judgment only if employers' actions were "totally sufficient to cause [the plaintiff's] injuries without any other causative factors" and thus it was appropriate to instruct the

11

jury that the defendant needed to establish the employers as the "sole" cause in fact). Tennessee recognizes the doctrine of independent intervening cause, which "applies to 'relieve a negligent actor from liability' 'only when the intervening act (1) was sufficient by itself to cause the injury, (2) was not reasonably foreseeable to the negligent actor, and (3) was not a normal response to the negligent actor's conduct.'" Long, 2015 WL 1306872, at *10 (quoting Rains v. Bend of the River, 124 S.W.3d 580, 593 (Tenn. 2003)). Foreseeability, in particular, is important to the question of whether an intervening action relieves a defendant of liability, "because no person is expected to protect against harms from events that he or she cannot reasonably anticipate or foresee or which are so unlikely to occur that the risk, although recognizable, would commonly be disregarded." Rains, 124 S.W.3d at 593.

Lowe's identifies a number of Altaquip's supposedly "improbable acts or omissions" that, it argues, Lowe's could not have foreseen. These acts and omissions can be reduced to four core sets of allegations: (1) Altaquip lacked adequate standards and training for handling large palletized compressors, including with regard to inspecting and, if necessary, re-palletizing them; (2) Altaquip failed to inspect the compressor while it was under Altaquip's control; (3) Altaquip did not re-palletize the compressor, either on a sturdier pallet or more firmly on a thin pallet; and (4) Poole was personally inexperienced in moving large palletized compressors. (Doc. No. 70 at 6–7.) Whether Altaquip's actions and policies were foreseeable, however, is closely tied up with questions of ordinary practice and the history of the relationship between Lowe's and Altaquip, and neither source, based on the facts before the court, establishes definitively that Lowe's was entitled to assume that Altaquip would detect and remedy a negligent palletization. A rational trier of fact could conclude, based on the undisputed facts Lowe's has presented, that all of Altaquip's actions, even if arguably unwise or negligent, were foreseeable. Similarly, a rational trier of fact

12

could conclude that none of Altaquip's actions were independently sufficient to cause Poole's injury.

Lowe's attempts to liken this case to Sisco v. Broce Manufacturing, Inc., 1 F. App'x 420 (6th Cir. 2001), in which the Sixth Circuit affirmed a grant of summary judgment based on the premise that an employer's negligent maintenance of a highway sweeper relieved the sweeper's manufacturer from liability for the death of an employee who had been forced to jump from the out-of-control sweeper when its brakes failed. Id. at 421, 425. That employer, though, had been in possession of the sweeper for almost nine years, not twenty-two days. Id. at 421. Also, the employer "all but ignored the explicit maintenance instructions provided in the broom's manual." Id. at 422. Lowe's provided no instructions, written or otherwise, that the compressor required re-palletization or frequent inspection. Finally, the employer in that case had "repeated, actual knowledge of problems with" the brakes. Id. at 423. Here, however, the extent of Altaquip's knowledge is disputed and subject to contradictory testimony. In Sisco, the Sixth Circuit acknowledged that the district court's decision to decide the issue of intervening cause on summary judgment, rather than send that fact-intensive question to a jury, was "[b]ased upon the unique facts of [the] case." Id. at 422. The unique facts of this case provide no such certainty that Altaquip's actions superseded Lowe's as the cause in fact of Poole's injuries. Because a rational trier of fact could be unpersuaded by Lowe's argument that Altaquip's actions were unforeseeable, Lowe's is not entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Lowe's Motion for Summary Judgment will be **DENIED**. Poole's Motion to Disqualify Counsel will also be **DENIED**. Pretrial conference remains

scheduled for January 6, 2017, at 9:00 a.m., with bench trial scheduled for January 17, 2017. An appropriate order will issue.

                                                                                            _____
                                                                                             WAVERLY D. CRENSHAW, JR.
                                                                                             UNITED STATES DISTRICT JUDGE